FILED - USDC - FLMD - ORL
FEB 9 2026 AM9:11

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**

MARVELLE J. "JAY" BALLENTINE,

*Plaintiff,*

v.

ACCENTURE LLP; DEVIN S. ANDERSON;

KIRKLAND & ELLIS LLP; and

META PLATFORMS, INC.,

*Defendants.*

Case No. ________________________

**COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

## NATURE OF THE ACTION

1. This action arises from defamatory statements published by Accenture LLP, through its counsel Devin S. Anderson of Kirkland & Ellis LLP, in federal court filings that falsely implied Plaintiff committed child sexual exploitation violations. At the time of publication, Anderson had acknowledged

in writing that Accenture accepted as true the federal complaint's allegation that no such violation occurred. The publication was made in litigation where Accenture and its co-defendant Meta Platforms, Inc. face federal civil rights claims under 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3)—allegations that include deprivation of constitutional rights through discriminatory enforcement of child-safety policies.

2. The federal action pending in the Northern District of California alleges that Meta and Accenture jointly operated an enforcement pipeline that permanently disabled Plaintiff's account under a child sexual exploitation policy without identifying violative content, without filing a CyberTipline report, and while restoring similarly situated white users flagged under the same policy during the same enforcement period while Plaintiff's status was not restored.

3. The federal complaint alleges that this conduct chilled Plaintiff's access to legal representation: attorneys declined to represent him upon learning of the CSE designation. Rather than defend on the merits, the First Motion signed by Anderson on behalf of Kirkland & Ellis LLP and in defense of Accenture asserted that, "An alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with the facts"—without identifying any content, any standard, or any factual basis.

4. The First Motion placed Plaintiff's name in close textual proximity to child sexual exploitation terminology *at least nine times, with five such*

*instances concentrated within the first three pages* of the memorandum. This action seeks damages for the reputational and emotional harm inflicted by those publications.

5. The defamatory publications were accessed in this District, where Plaintiff resides and suffered reputational injury and severe emotional distress. Plaintiff seeks compensatory damages in the amount of $10,000,000.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Complete diversity of citizenship exists: Plaintiff is a citizen of Florida; Accenture LLP is not a citizen of Florida; Devin S. Anderson is a citizen of Utah; Kirkland & Ellis LLP is not a citizen of Florida; and Meta Platforms, Inc. is a citizen of Delaware and California. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. Plaintiff seeks $10,000,000 in compensatory damages.

7. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiff suffered reputational injury and emotional distress in this District. The defamatory publications at issue were accessed and read by third parties in this District.

8. This Court has personal jurisdiction over Defendants. Accenture and Meta transact business in Florida and caused tortious injury in Florida through the conduct alleged in this Complaint. Anderson and Kirkland & Ellis LLP

caused tortious injury in Florida by publishing the defamatory filings, which were accessed in this District and caused reputational and emotional harm to Plaintiff in this District.

## PARTIES

### A. Plaintiff

9. Plaintiff Marvelle J. "Jay" Ballentine is an individual and a citizen of the State of Florida, domiciled in Clermont, Lake County, Florida.

### B. Defendants

10. Defendant Accenture LLP ("Accenture") is a limited liability partnership. Upon information and belief, Accenture's partners are citizens of states other than Florida. Alternatively, Accenture's principal place of business is located outside the State of Florida. Accenture is not a citizen of Florida for purposes of diversity jurisdiction.

11. Defendant Devin S. Anderson ("Anderson") is an individual and a citizen of the State of Utah, domiciled in Utah. Anderson is a partner at Kirkland & Ellis LLP and served as counsel of record for Accenture in the Federal Action. Anderson signed the First Motion and the Second Motion on behalf of Accenture.

12. Defendant Kirkland & Ellis LLP ("Kirkland") is a limited liability partnership with its principal place of business in Chicago, Illinois. Upon information and belief, Kirkland is not a citizen of Florida for purposes of

diversity jurisdiction. Kirkland served as counsel of record for Accenture in the Federal Action.

13. Defendant Meta Platforms, Inc. ("Meta") is a corporation incorporated under the laws of Delaware with its principal place of business in Menlo Park, California. Meta is a citizen of Delaware and California.

## FACTS

### A. The Parties' Relationship

14. Accenture provides content moderation services under contract with Meta. Anderson and Kirkland serve as litigation counsel for Accenture.

### B. The Federal Action

15. On September 9, 2025, Plaintiff filed a civil action in the United States District Court for the Northern District of California, captioned *Ballentine v. Meta Platforms, Inc., et al.*, Case No. 3:25-cv-07671-CRB (the "Federal Action"). The Federal Action named Accenture and Meta as defendants.

16. Plaintiff proceeds pro se in the Federal Action.

17. The Federal Action alleges that Meta invoked a child sexual exploitation ("CSE") enforcement action against Plaintiff on July 4, 2022; that Meta restored contractual status for white comparators flagged under the same policy during the same enforcement period while Plaintiff's status was not restored; and that Plaintiff sent Meta a written reinstatement demand on April 22, 2025, which Meta constructively denied.

18. The Federal Action further alleges that Meta and Accenture operated a joint content moderation pipeline in which Accenture reviewers conducted final human review of enforcement matters labeled under Meta's CSE policy; that Accenture reviewers had access to profile photos and government identification sufficient to identify a user's race at the time of review; and that Accenture and Meta engaged in a conspiracy to deprive Plaintiff of equal rights to make and enforce contracts under 42 U.S.C. §§ 1981, 1982, and 1985(3).

19. The Federal Action alleges that the CSE designation applied to Plaintiff's account on July 4, 2022, has been continuously maintained since that date; that no CyberTipline report was filed with the National Center for Missing & Exploited Children ("NCMEC"); that no contact from federal, state, or local law enforcement has occurred; and that white comparators flagged under the same policy during the same enforcement period were restored to the platform.

20. The federal complaint filed in the Northern District of California specifically alleged that the CSE designation prevented Plaintiff from obtaining legal representation. Paragraph 12 of the federal complaint states: "Meta's false CSE designation on Plaintiff, affirmed in Accenture's final human review process, has accomplished its purpose. Attorneys will not take his case. Plaintiff's business has been destroyed, his commercial property withheld, his access to continuing education severed, and his participation in digital commerce permanently foreclosed. It is against this backdrop that Plaintiff proceeds, pro se."

21. These allegations were on the public docket before Accenture filed the First Motion.

**C. The Complaint's Disclosure**

22. The original complaint filed on September 9, 2025 contained a singular footnote with the following text: "As a CSA survivor, Plaintiff gratefully acknowledges the unwavering support of his wife, whose steady presence made the psychological recovery, and subsequent preparation of this Complaint possible. He further acknowledges his children, especially his eldest, who endured his distance during the preparation of this filing after once celebrating his NRVTA graduation with pride. This work now returns to them, just as their father and husband does."

23. Accenture, through Anderson and Kirkland, reviewed the complaint which contained the footnote before preparing a responsive motion.

**D. Pre-First Motion Alignment**

24. On September 30, 2025, Plaintiff emailed counsel for Accenture and Meta proposing, among other options: "OPTION 2 — Pause Rule 12; Mediation: Stipulate to suspend Rule 12 motion practice and proceed to mediation, with a joint proposed schedule submitted for the Court's approval."

25. On October 3, 2025, Meta's counsel responded that mediation would not be productive.

26. On October 4, 2025, Anderson, as counsel for Accenture, responded: "Accenture's position is the same as Meta's."

### E. The Defamatory Publication

27. On October 16, 2025, Accenture, through Anderson and Kirkland, filed a motion to dismiss in the Federal Action (the "First Motion").

28. The First Motion was filed on the public federal court docket and is publicly accessible via the federal Public Access to Court Electronic Records (PACER) system.

29. The First Motion, signed by Anderson, stated: "An alternative explanation for Accenture's recommendation—a legitimate community standards violation by Ballentine—is consistent with the facts alleged in the complaint."

30. The First Motion did not identify any specific content, any specific community standard, or any factual basis supporting the assertion that Plaintiff committed a "legitimate community standards violation."

31. Plaintiff's name appears in the same sentence or an adjacent sentence as CSE terminology repeatedly in the First Motion.

32. The First Motion did not allege that Plaintiff committed a CSE violation.

### F. The Clarification and Pivot

33. On October 24, 2025, Plaintiff emailed Anderson requesting that Accenture include clarification in its forthcoming filing that Accenture did not contend Plaintiff violated child protection laws.

34. On October 28, 2025, Anderson sent an email communication to Plaintiff.

35. In that communication, Anderson quoted from the First Motion: "Ballentine alleges there was no CSE violation associated with his account."

36. In that communication, Anderson stated that Accenture's argument "expressly accepts as true" the complaint's assertion that there was no CSE violation and that the First Motion set forth "an alternative explanation... that is unrelated to CSE."

37. In that communication, Anderson stated: "In Accenture's forthcoming motion to dismiss... we will include language reinforcing this point."

38. On October 31, 2025, Accenture, through Anderson and Kirkland, filed a second motion to dismiss in the Federal Action (the "Second Motion").

39. The Second Motion changed the language from "a legitimate community standards violation by Ballentine" to "a legitimate violation of another community standard unrelated to CSE."

40. The Second Motion did not identify any specific community standard that Plaintiff allegedly violated, any specific content that Plaintiff allegedly posted, or any factual basis for the revised statement.

### G. Meet-and-Confer Coordination

41. On October 24, 2025, Plaintiff requested that Accenture provide separate availability for the court-ordered preservation meet-and-confer to avoid overlap with Meta's scheduled session.

42. On October 28, 2025, Anderson responded: "there is no reason for separate sessions" and "the session should be combined with all parties" and "We can join the line provided by Meta, if you forward that information."

### H. No Identified Pleading Relevance

43. The First Motion did not state that resolving any issue presented required the Court to determine whether Plaintiff violated any specific community standard, and it did not identify any such standard or content to support the asserted "legitimate community standards violation."

44. The First Motion did not explain how the "legitimate community standards violation" assertion corresponded to any identified content, any identified standard, or any identified enforcement category other than the child-safety context discussed throughout the filing.

45. The procedural posture of the First Motion was a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which tests the legal sufficiency of the complaint's allegations.

46. The First Motion's legal arguments addressed statute of limitations, causation, Section 230 immunity, and the adequacy of Plaintiff's comparator allegations. None of these arguments required or depended upon a determination that Plaintiff committed a community standards violation.

47. The statement asserting "a legitimate community standards violation by Ballentine—is consistent with the facts" was not necessary to, and did not support, any legal argument presented in the First Motion.

### I. Relation to the Underlying Federal Claims

48. The conduct alleged in the preceding subsections—asserting an unsubstantiated violation against Plaintiff in a public filing without identifying content, a standard, or a factual basis—is of the same character as the conduct alleged in the Federal Action: applying an unsubstantiated CSE designation to Plaintiff's account without identifying violative content, filing a CyberTipline report, or citing a factual basis.

### J. Damages

49. Plaintiff's reputation was harmed in Florida as a result of the defamatory publication.

50. Plaintiff suffered severe emotional distress. Plaintiff had disclosed his status as a CSA survivor in the federal complaint. The First Motion's public filing of CSE-adjacent references and implications without factual basis, in that context, caused Plaintiff severe emotional distress.

### K. Textual Analysis of the First Motion

51. The First Motion consists of seventeen pages of substantive text, excluding the cover page, certificate of service, tables, and signature blocks.

52. The phrase "Child Sexual Exploitation" or the abbreviation "CSE" appears twenty-six times in the First Motion.

53. Plaintiff's name or a direct reference to Plaintiff appears forty-one times in the First Motion.

54. Plaintiff's name appears in the same sentence as CSE-related terminology nine times.

55. Five of those nine instances occur within the first three pages of the memorandum's substantive text: the Introduction, Summary of Argument, and Background sections.

56. In the Background section of the First Motion, Plaintiff's name appears seven times. Six of those seven references place Plaintiff's name in the same sentence or immediately adjacent sentence as CSE-related terminology.

57. The First Motion does not identify any content that Plaintiff allegedly posted.

58. The First Motion does not identify any community standard that Plaintiff allegedly violated.

59. The First Motion does not provide any factual basis for the assertion that Plaintiff committed "a legitimate community standards violation."

**Table 1: Publication Metrics**

| Metric | Value |
|---|---|
| Total pages of substantive text in First Motion | 17 |
| Total instances of "Child Sexual Exploitation" or "CSE" | 26 |
| Total references to Plaintiff by name or direct reference | 41 |
| Instances of Plaintiff's name in same sentence as CSE terminology | 9 |
| Instances concentrated in first 3 pages of memorandum | 5 |
| References to Plaintiff in Background section | 7 |
| Of those, references paired with CSE terminology | 6 |
| Content identified to support "legitimate violation" assertion | 0 |
| Community standard identified to support assertion | 0 |
| Factual basis provided for assertion | 0 |

**Table 2: Frequency and Concentration Ratios**

| Calculation | Result |
|---|---|
| CSE references per page | 1.53 |
| Plaintiff references per page | 2.41 |
| Percentage of Background references to Plaintiff paired with CSE | **85.7%** |
| Percentage of all Plaintiff-CSE pairings in first 3 pages | 55.6% |

## COUNT I

**DEFAMATION (LIBEL)**

*(Against Accenture LLP, Devin S. Anderson, and Kirkland & Ellis LLP)*

60. Plaintiff incorporates by reference all preceding paragraphs.

61. On October 16, 2025, Accenture, through Anderson and Kirkland, filed the First Motion on the public federal court docket, accessible to third parties through PACER.

62. The statement was of and concerning Plaintiff. The First Motion identified Plaintiff by name.

63. The First Motion asserted "a legitimate community standards violation by Ballentine—is consistent with the facts" in a filing whose textual characteristics are set forth in Section K of this Complaint. The publication conveyed a defamatory meaning.

64. The publication was false and defamatory by implication in that it conveyed to readers that Plaintiff engaged in a CSE violation or child-protection-law violation warranting enforcement action. Plaintiff did not commit a CSE violation or a child-protection-law violation.

65. After the First Motion was filed, Anderson stated in writing that Accenture "expressly accepts as true" the complaint's assertion that there was no CSE violation, stated that Accenture would include language reinforcing this point in its forthcoming motion, and Accenture, through Anderson and Kirkland,

later changed its phrasing to reference "another community standard unrelated to CSE" without identifying any standard or content.

66. Accenture, Anderson, and Kirkland published the statement with at least negligence concerning its truth or falsity. The First Motion asserted a "legitimate" violation without identifying any content, any standard, or any factual basis.

67. Alternatively, Accenture, Anderson, and Kirkland published the statement with express malice. Anderson acknowledged in writing that Accenture accepted as true the absence of any CSE violation. Accenture, through Anderson and Kirkland, then filed the Second Motion asserting "a legitimate violation of another community standard unrelated to CSE" without identifying any content, any standard, or any factual basis. These facts support an inference of knowledge of falsity or reckless disregard for the truth.

68. The assertion of a "legitimate" violation of an unspecified community standard—in a filing using CSE terminology in close proximity to Plaintiff's name at least nine times—tends to prejudice Plaintiff in the eyes of a substantial and respectable minority of the community.

69. As a direct and proximate result of the defamatory publication by Accenture, Anderson, and Kirkland, Plaintiff suffered damages, including injury to reputation and severe emotional distress.

## <u>COUNT II</u>

## CIVIL CONSPIRACY TO DEFAME

*(Against All Defendants)*

70. Plaintiff incorporates by reference all preceding paragraphs.

71. Accenture and Meta operated a joint content moderation pipeline prior to and independent of the Federal Action. The Federal Action alleges that Accenture and Meta engaged in a conspiracy to deprive Plaintiff of equal contractual rights under 42 U.S.C. §§ 1981, 1982, and 1985(3) through the joint maintenance of a CSE designation that was applied without identified violative content, without a CyberTipline report, and without law enforcement contact.

72. In the course of the Federal Action, Accenture, through Anderson and Kirkland, and Meta reached an agreement or understanding to pursue a common litigation objective, as evidenced by the following: On October 4, 2025, Anderson stated "Accenture's position is the same as Meta's." On October 28, 2025, Anderson stated "there is no reason for separate sessions," "the session should be combined with all parties," and "We can join the line provided by Meta, if you forward that information."

73. Meta, through its counsel Orrick, Herrington & Sutcliffe LLP, filed its motion to dismiss on October 15, 2025. Accenture, through Anderson and Kirkland, filed the First Motion on October 16, 2025.

74. Meta's motion refers to Plaintiff as "Plaintiff." Meta's motion does not assert that Plaintiff committed any violation. Meta's motion does not place Plaintiff's name in proximity to CSE terminology.

75. The First Motion, signed by Anderson on behalf of Kirkland in defense of Accenture, refers to Plaintiff as "Ballentine." The First Motion places "Ballentine" in the same sentence or adjacent sentence as CSE terminology nine times. The First Motion asserts "a legitimate community standards violation by Ballentine" without identifying content, standard, or factual basis.

76. The motions were filed twenty-four hours apart following the coordination set forth in paragraphs 41 and 72.

77. In furtherance of the agreement, Accenture, through Anderson and Kirkland, committed the following overt acts: (a) filed the First Motion on October 16, 2025, containing the statement "a legitimate community standards violation by Ballentine—is consistent with the facts" with no content, no standard, and no factual basis identified, in a filing using CSE terminology in close proximity to Plaintiff's name at least nine times; and (b) filed the Second Motion on October 31, 2025, changing the language to "a legitimate violation of another community standard unrelated to CSE" without identifying any standard or content.

78. The overt acts identified in the preceding paragraph are of the same character as the conduct alleged in the Federal Action: attributing an unsubstantiated violation to Plaintiff in a public forum without identifying content, a standard, or a factual basis. The Federal Action alleges that the original enforcement event followed the same pattern—a CSE designation

applied without identified violative content, without a CyberTipline report, and without law enforcement referral.

79. As a direct and proximate result of the conspiracy, Plaintiff suffered damages, including injury to reputation and severe emotional distress.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Against Accenture LLP, Devin S. Anderson, and Kirkland & Ellis LLP)*

80. Plaintiff incorporates by reference all preceding paragraphs.

81. Accenture, through Anderson and Kirkland, engaged in the following conduct: (a) filed the First Motion on October 16, 2025, asserting "a legitimate community standards violation by Ballentine—is consistent with the facts" with no content, no standard, and no factual basis, in a filing using CSE terminology in close proximity to Plaintiff's name at least nine times; (b) on October 28, 2025, Anderson acknowledged in writing that Accenture "expressly accepts as true" that there was no CSE violation and stated Accenture would include language reinforcing this point in its forthcoming motion; and (c) on October 31, 2025, Accenture, through Anderson and Kirkland, filed the Second Motion changing the language to "a legitimate violation of another community standard unrelated to CSE" without identifying any standard or content.

82. Plaintiff had disclosed in the federal complaint, which Accenture, Anderson, and Kirkland reviewed before filing the First Motion, that Plaintiff is a CSA survivor.

83. The conduct set forth in paragraph 81—asserting a "legitimate" violation without identified content, standard, or factual basis, in a filing reviewed after Defendants learned of Plaintiff's CSA survivor status, while concentrating CSE terminology in proximity to Plaintiff's name at the frequency set forth in Section K—was extreme and outrageous.

84. The conduct was intentional or reckless.

85. Plaintiff suffered severe emotional distress as a direct and proximate result of the conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

(a)Compensatory damages in the amount of $10,000,000;

(b)Prejudgment interest as allowed by law;

(c)Costs of this action; and

(d)Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues so triable.

Date: February 9, 2026

Respectfully submitted,

Marvelle J. "Jay" Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
Telephone: (407) 794-6503
jayballentine@protonmail.com